# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ZAINAL ABIDIN, individually, and as Special Administrator of the Estate of INDRA BAYU AJI, Deceased; SITI ANBIYA GHAASYIYA ISHIMICHI, individually, and as Special Administrator of the Estate of TRIE YUDHA GAUTAMA, Deceased; and TANDINA SUKARNO PUTRI, individually, and as Special Administrator of the Estate of PERMADI ANGGRIMULJA, Deceased, *Plaintiffs*, v. THE BOEING COMPANY, a corporation, *Defendant*. | In re: Lion Air Flight JT 610 crash<br><br>Case No. 20-cv-2643<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW

Plaintiffs, ZAINAL ABIDIN, individually, and as Special Administrator of the Estate of INDRA BAYU AJI, Deceased; SITI ANBIYA GHAASYIYA ISHIMICHI, individually, and as Special Administrator of the Estate of TRIE YUDHA GAUTAMA, Deceased; and TANDINA SUKARNO

PUTRI, individually, and as Special Administrator of the Estate of PERMADI ANGGRIMULJA, Deceased, by their attorneys, Austin Bartlett of BartlettChen LLC and Manuel von Ribbeck and Monica Ribbeck Kelly of Ribbeck Law Chartered, bring this Complaint at Law against the Defendant, The Boeing Company, and in support, allege the following:

## INTRODUCTION

1. On Monday, October 29, 2018, a newly-delivered Boeing 737 MAX 8 commercial aircraft crashed in the Java Sea off the coast of Indonesia killing everyone on board. The Boeing 737 MAX 8 was being operated by the Lion Air airline as Lion Air Flight JT 610.

2. The newly-delivered Boeing 737 MAX 8 crashed as a result of, among other things, a new Boeing flight control system which automatically steered the aircraft toward the ground, and which caused an excessive nose-down attitude, significant altitude loss, and, ultimately, the crash into the Java Sea killing everyone on board.

3. The new automated flight control system on the Boeing 737 MAX 8 is known as the Maneuvering Characteristics Augmentation System (MCAS). Boeing added MCAS because during its redesign of the Boeing 737, Boeing changed the type, size, and placement of the aircraft's engines, which made the aircraft susceptible to stalling and altered the aircraft's handling characteristics.

4. Although the Boeing 737 MAX 8 has two angle of attack (AOA) sensors, Boeing designed the MCAS system to only rely on data from a single AOA sensor. Due to this lack of redundancy, if a single AOA sensor is defective, the sensor will feed false information to the MCAS, which, in turn, will cause the MCAS to repeatedly activate, override the pilots, and force the aircraft into an unwarranted nose-dive.

5. On March 10, 2019, a second Boeing 737 Max 8 aircraft crashed in Ethiopia (Ethiopian Airlines Flight 302) under circumstances which are strikingly similar to the Lion Air JT 610 crash, namely Boeing's MCAS was erroneously activated and forced the aircraft into an unwarranted nose-dive.

6. Following the Ethiopian Airlines crash, the Boeing 737 Max 8 aircraft was grounded around the world. Congress, the Department of Transportation, the Federal Aviation Administration (FAA), the Department of Justice, and the FBI have launched investigations into the certification and safety of the Boeing 737 MAX.

7. On April 4, 2019, Boeing's then Chairman, President, and CEO, Dennis A. Muilenburg, issued a statement wherein he admitted that Boeing's MCAS activated based on erroneous AOA information, and that this was a contributing cause of both the Lion Air JT 610 crash and the Ethiopian Airlines Flight 302 crash:

> "* * *[I]t's apparent that in both flights the Maneuvering Characteristics Augmentation System, known as MCAS, activated in response to erroneous angle of attack information. The history of our industry shows most

accidents are caused by a chain of events. This again is the case here, and we know we can break one of those chain links in these two accidents. *As pilots have told us, erroneous activation of the MCAS function can add to what is already a high workload environment. It's our responsibility to eliminate this risk. **We own it** and we know how to do it.*" (emphasis added.)

## SUBJECT MATTER JURISDICTION

8. This Court has subject matter jurisdiction over this controversy under the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369, because there is minimal diversity between the parties and the accident involves at least 75 deaths at a discrete location in a single accident. Boeing is a Delaware corporation with its principal place of business in Illinois. Plaintiff and Decedent are citizens of Indonesia. The crash of Lion Air Flight JT 610 into the Java Sea resulted in the deaths of all 189 people on board the aircraft.

9. Plaintiffs elect to pursue all maritime claims in this Court under the Savings-to-Suitors Clause. *See* 28 U.S.C. § 1333.

## PARTIES & VENUE

10. Plaintiffs are citizens of Indonesia and have been appointed as the Special Administrator of the Estates of the Decedents. At all relevant times, the Decedents were citizens of Indonesia.

11. The Boeing Company ("Boeing") is a corporation organized under the laws of Delaware with its worldwide headquarters and principal place of business in Chicago, Illinois. It is thus a citizen of Delaware and Illinois.

12. Venue is proper because Boeing's worldwide headquarters and principal place of business is located in Chicago, Illinois, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### GENERAL ALLEGATIONS

**I. Boeing 737 MAX 8 Design & Manufacture**

13. Boeing's 737 series of aircraft is the highest selling commercial aircraft in history with over 10,000 aircraft delivered.

14. Boeing's 737 MAX series is the fourth generation of the Boeing 737 series of aircraft and was first announced by Boeing on August 30, 2011; the first flight was several years later, on January 29, 2016.

15. Prior to March 8, 2017, Boeing designed the 737 MAX 8 model aircraft in the United States.

16. On March 8, 2017, the Federal Aviation Administration ("FAA") approved the design for the 737 MAX 8 model aircraft, also known as the 737-8.

17. At all relevant times, Boeing manufactured the 737 MAX 8 model aircraft in the United States.

18. The 737 MAX 8 is one of Boeing's several 737 MAX series of aircraft, the newest generation of Boeing's 737 series of aircraft, which Boeing initially designed, in the United States, in or around 1964—over 50 years ago.

5

19. According to Boeing, as part of its generational redesigns of the 737 series of aircraft, it "has continuously improved the products, features, and services."

20. At all relevant times, Boeing marketed the 737 MAX aircraft as a seamless continuation of its prior 737 series aircraft in terms of operation and maintenance.

21. On its website, Boeing states:

> Airlines ask for an airplane that fits smoothly in today's fleet
>
> Because of the 737's popularity with airlines everywhere around the world, integrating the new 737 MAX is an easy proposition. As you build your 737 MAX fleet, millions of dollars will be saved because of its commonality with the Next-Generation 737, ease of maintenance, wide availability of 737 pilots, and the global infrastructure that supports the aircraft in operation.[1]

On the same website, Boeing further states that "*737 Flight Crews Will Feel at Home in the MAX.*"[2] (emphasis added.)

22. The Boeing 737 MAX 8, however, had a significantly different design from previous 737-series aircrafts, which were not appropriately disclosed to airlines or pilots.

## II. Boeing 737 MAX 8 Defect

23. Unlike any prior 737, Boeing designed the 737 MAX 8 to automatically dive toward the ground in certain situations, namely, where the aircraft's AOA sensor provided information to the MCAS indicating such a dive was necessary to maintain lift.

---

[1] https://www.boeing.com/commercial/737max/by-design/#/operational-commonality
[2] https://www.boeing.com/commercial/737max/by-design/#/advanced-flight-deck

6

24. A consequence of this unsafe design, however, was that any misinformation from the AOA sensor to the MCAS would cause the Boeing 737 MAX 8 to automatically and erroneously dive toward the ground. This condition can lead to an excessive nose-down attitude, significant altitude loss, and impact with terrain.

**III. Lion Air Flight 610**

25. In or around August 2018, Boeing delivered a newly manufactured 737 MAX 8 aircraft with tail number PK-LQP (the "Subject Aircraft") to Lion Air airlines in Indonesia.

26. Two months later, on the morning of October 29, 2018, Lion Air was operating the Subject Aircraft on a commercial flight from Jakarta, Indonesia to Pangkal Pinang, Indonesia ("Lion Air Flight JT 610").

27. Around 6:22 a.m. on the morning of October 29, 2018, shortly after takeoff from Jakarta, the pilot for Lion Air Flight JT 610 asked air traffic control to return to Jakarta because of a problem controlling the subject aircraft.

28. Around 10 minutes later, around 6:32 a.m., the Subject Aircraft crashed into the Java Sea at a high speed and disintegrated.

29. Plaintiffs' Decedents were onboard Flight JT 610 and died in the crash.

30. At no relevant time prior to the crash of Lion Air Flight JT 610 into the Java Sea did Boeing adequately warn Lion Air or its pilots of the unsafe

condition caused by the new "auto-diving" design of the 737 MAX 8 flight system.

31. As a result of the crash of Lion Air Flight JT 610, on November 7, 2018, the FAA issued "Emergency Airworthiness Directive (AD) 2018-23-51 [to] owners and operators of The Boeing Company Model 737-8 and -9 airplanes," which contained mandatory warning and instructions as to the "unsafe condition . . . likely to exist or develop" in the 737 MAX 8 relating to its new auto-diving feature.

32. According to reports, prior to the crash of Lion Air Flight JT 610, Boeing 737 pilots "were not privy in training or in any other manuals or materials" to information regarding "the new system Boeing had installed on 737 MAX jets that could command the plane's nose down in certain situations to prevent a stall."[3] Further reports indicate that Boeing "withheld information about potential hazards with the new flight-control feature."[4]

### CAUSES OF ACTION

### COUNT I
### STRICT PRODUCTS LIABILITY

33. Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

---

[3] https://www.malaymail.com/s/1692841/indonesia-says-situation-facing-lion-air-flight-jt610-crew-not-in-flight-ma

[4] https://www.wsj.com/articles/boeing-withheld-information-on-737-model-according-to-safety-experts-and-others-1542082575

8

34. At the time the Subject Aircraft left the control of Boeing, the Subject Aircraft was defective, not fit for its intended purposes and unreasonably dangerous in one or more of the following particulars:

- a) the subject aircraft contained an auto-dive system—known as the MCAS—that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;

- b) the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic work load on the flight crew;

- c) the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;

- d) the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

- e) the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

- f) the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;

- g) the subject aircraft contained defective AOA sensors;

- h) despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light; Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

- i) the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein.

35. As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered personal injury and death.

36. Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

37. Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT II
## NEGLIGENCE – PRODUCTS LIABILITY

33. Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

34. At all relevant times, Boeing owed a legal duty to assure that the Subject Aircraft was properly designed, manufactured, and assembled and free from defects so as not to cause personal injury or death.

35. Boeing breached its duties under the law and was negligent in one or more of the following ways:

> a) the subject aircraft contained an auto-dive system—known as MCAS—that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;
>
> b) the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic work load on the flight crew;
>
> c) the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;
>
> d) the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;
>
> e) the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;
>
> f) the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;
>
> g) the subject aircraft contained defective AOA sensors;
>
> h) despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light;

11

        Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

i) the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein.

j) Boeing failed to conduct appropriate testing of the subject aircraft's components and systems prior to delivery to Lion Air.

k) Boeing failed to conduct a thorough failure modes and effects analysis of the subject aircraft's components and systems, including of the MCAS.

36. As a direct and proximate result of one or more of the aforementioned acts of negligence by Boeing, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea and Plaintiffs' Decedents sustained fatal injuries.

37. Due to the tragic death of the Decedents, Plaintiffs have been injured and claims all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

38. Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The

Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT III
## NEGLIGENCE -- FAILURE TO WARN

33. Plaintiffs re-adopt and re-allege paragraphs 1 through 32 above.

34. At all relevant times, Boeing had a duty to inform and warn the owners, operators, and pilots of the 737 MAX 8 series of aircraft, including the Subject Aircraft, of the unsafe condition likely to exist or develop by virtue of the auto-dive feature.

35. Boeing breached its duties under the law and was negligent in one or more of the following ways:

   a) the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system known as MCAS;

   b) the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

   c) the subject aircraft lacked an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

   d) Boeing failed to inform airlines and pilots, including the Lion Air and its pilots, that unlike prior 737 Models, pulling back on the yoke and raising the nose would NOT activate breakout switches to stop automated tail movement; and,

   e) the 737 MAX 8 Flight Crew Operations Manual failed to appropriately alert pilots, including the pilots of the

13

subject aircraft, to the design, functions, and hazards of Boeing's auto-dive system and procedures for addressing a malfunctioning auto-dive system.

36. As a direct and proximate result of that breach, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiff's Decedent sustained fatal injuries.

37. Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

38. Plaintiffs bring this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, Plaintiffs, as the Special Administrators of the Estates of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendant, The Boeing Company, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues so triable.

Dated: April 30, 2020 Respectfully submitted,

By: /s/ *Austin Bartlett*
Austin Bartlett (ARDC No. 6273427)
**BartlettChen LLC**
150 North Michigan Avenue, Suite 2800
Chicago, Illinois 60601
(312) 624-7711
www.bartlettchenlaw.com
austin@bartlettchenlaw.com

--And--

By: /s/ *Manuel von Ribbeck*
Manuel von Ribbeck (ARDC No. 6230117)
Monica Ribbeck Kelly (ARDC No. 6225920)
**Ribbeck Law Chartered**
505 N. Lake Shore Drive, Suite 102
Chicago, Illinois 60611
(833) 883-4373
(312) 973-0146
www.ribbecklaw.com
mail@ribbecklaw.com
monicakelly@ribbecklaw.com

*Counsel for Plaintiffs*